## MISSOURI PAC. R. CO. v. JONES.
### No. 4020.

Court of Civil Appeals of Texas. Texarkana. May 5, 1931.

Rehearing Denied May 21, 1931.

See also 24 S.W.(2d) 32.

Leake, Henry, Wozencraft & Frank, of Dallas, for appellant.

S. P. Jones and Franklin Jones, both of Marshall, and J. A. R. Moseley, Jr., of Texarkana, for appellee.

SELLERS, J.

This is the second appeal of this case, and the former opinion of this court will be found in 12 S.W.(2d) 1050, and for a partial statement of the nature and result of the case on this appeal we adopt the following from the former opinion:

"J. L. Peace, a locomotive engineer, was killed in a collision between two of appellant's trains on the main line near the town of Norphlet, Ark. At the time of the collision, Peace was one of the appellant's engineers and in charge of engine No. 95, which was moving south pulling three tank cars. Engine No. 1278 was backing north on the same track, pulling several box cars attached to its front end. Both trains were intending to take a siding in order to allow another train to pass which was due within a few minutes. The two trains above mentioned came together on a curve in the track. As a result, Peace was killed. He left a wife and some minor children. This suit was filed by Franklin Jones as administrator of the estate of Peace, to recover damages. It is conceded that the colliding trains were engaged in interstate commerce, and that the rights and liabilities of the parties are governed by the Federal Employers' Liability Act (45 USCA §§ 51–59).

"The proof shows that at the time the collision occurred a brakeman was riding in the engine cab with Peace (the engineer) and the fireman. The administrator charged negligence on the part of the crew operating engine No. 1278, and also charged negligence on the part of the fireman and brakeman who were in the cab with Peace, in failing to keep a lookout for trains approaching from the opposite direction. Among the regulations adopted and promulgated by the appellant was rule No. 93, which is as follows:

" 'Rule 93. Within the yard limits the main track may be used, protecting against first-class trains. Second and inferior class and extra trains must move within yard limits prepared to stop unless the main track is seen or known to be clear.'

"It is admitted by both parties to this suit that the above rule was applicable to both of those trains at the time the collision occurred. They were of the same class and were moving on the main line within the yard limits of Norphlet. It was the duty of each crew to observe and obey that rule."

On the special issues submitted the jury found the following facts: (1) The operatives of engine No. 1278 violated rule 93 at the time of and just before the collision; (2) which violation was approximate cause of the collision; (3) that the deceased, Peace, just before and at the time of the collision was not operating engine No. 95 in violation of rule 93; (4) that the fireman or brakeman on the engine of J. L. Peace was in such position for

a sufficient length of time to have discovered, by the exercise of ordinary care, the presence of engine No. 1278 in time to have warned Peace in time for him to have averted a collision and resulting death to himself by the exercise of ordinary care and the use of the means at his command; (5) that such person on the fireman's side of the engine failed to exercise ordinary care to warn Peace of the presence of engine No. 1278 in time for him to have, in the exercise of ordinary care, avoided injury to himself; (6) which negligence was the approximate cause of the injury and death of Peace; (7) that Peace did not assume the risk of the collision under the conditions and circumstances in evidence; (8) the jury assessed the damages at $35,000.

All of appellant's assignments of error save one are based upon the assumption that J. L. Peace, engineer of engine No. 95, at the time of the collision was violating rule 93, notwithstanding the jury found to the contrary. If the evidence is sufficient to support the finding of the jury, then all of appellant's assignments involving this issue are without merit and should be overruled.

There was evidence offered on the trial which would authorize a jury to believe, and they evidently did, that Peace could not see from his position in the cab of the engine No. 95 the approach of engine No. 1278, due to the sharpness of the curve at this point in the track, but from the fireman's side of engine No. 95 the view of engine No. 1278 was unobstructed for a sufficient distance for the fireman or brakeman to have signaled Peace in time for him to have stopped his engine before the collision occurred. The fact was also established that it was the duty of the fireman and the brakeman of engine No. 95 when in their position on the fireman's side of the cab to keep a lookout to see that the track to the front of their train was unobstructed, and, if it was not, to warn the engineer of such obstruction. It is undisputed that the only persons on engine No. 95 were J. L. Peace, engineer, and the fireman and brakeman, and while the fireman and brakeman both testified that neither of them were in a position on the fireman's side of the cab of engine No. 95 to have seen the approach of engine No. 1278 in time to have warned the engineer, as it was their duty to do, when in such position, yet there is sufficient evidence in this record to support the finding of the jury that either the fireman or the brakeman on engine No. 95 was in the fireman's position

of the engine cab for sufficient time to have discovered, by the exercise of ordinary care, the presence of engine No. 1278 in time to have warned engineer Peace in time for him to have averted the injury and resulting death to himself by the exercise of ordinary care in the use of the means at his command, and that the person in such position negligently failed to so warn the engineer.

We have reached the conclusion that under the facts in this case it was permissible, under rule 93, for Engineer Peace to rely upon the fireman or brakeman occupying the fireman's position in the cab of the engine to make known to him that the track was clear when his (Peace's) vision was obstructed, and that Engineer Peace was not required to know by his own vision that the track was clear. This was certainly the interpretation placed on the rule by the employees of appellant as will be shown by the testimony of the engineer on engine No. 1278 which is as follows: "Where I was going around a curve and I was on the outside of the curve I relied on the conductor and fireman to look out for me and it was their duty to do so. That was the only way I could know the track the way I was going was clear for operation, and safe, when I could not see myself. In that way I had the right to rely on them and did rely on them and went on operating my engine with that knowledge and under that plan. That is my interpretation of Rule 93." If it was not intended by appellant when it promulgated rule 93 that the engineer should on such occasions rely upon the fireman and brakeman for his knowledge of whether or not the track was clear, then we are unable to understand why the last phrase "or known to be clear" was added to the rule.

Believing that the evidence is sufficient to support the finding of the jury that Engineer Peace was not violating rule 93 at the time of the collision in which he was killed, all of appellant's assignments based upon the theory that it was being violated by the engineer are overruled.

We have carefully considered appellant's eighth assignment of error calling in question the ruling of the trial court in admitting certain testimony of witnesses which appellant insists said witnesses were not qualified to give, and have reached the conclusion that the trial court's ruling was correct and said assignment is overruled.

The judgment of the trial court is affirmed.